HONORABLE RONALD B. LEIGHTON

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Eric Moore, Diego Barba and Lamar Johnson, individually, and on behalf of all other similarly situated current and former employees of Roadway Express, Inc.;<br><br>Plaintiffs,<br><br>v.<br><br>Roadway Express, Inc., YRC Worldwide, Inc., YRC Inc., and DOES 1-20;<br><br>Defendants. | Case No.CV09-1588 RBL (OPx)<br><br>ORDER DENYING CLASS CERTIFICATION |

THIS MATTER is before the Court on cross motions regarding Class Certification. Defendant filed its Motion to Deny Class Certification [Dkt. #90] before plaintiffs filed their Motion for Class Certification [Dkt. #93]. Discovery related to Class Certification has been completed and the issue is ripe for resolution. The Court has reviewed all materials submitted in connection with the issue of class certification and has heard oral argument of counsel. For the following reasons the motion to certify the plaintiffs' proposed class is **DENIED**.

ORDER
Page - 1

# DISCUSSION

Defendant YRC, Inc. ("YRC") is a trucking company operating across the United States. YRC was formed in October 2008 when Defendant Roadway Express, Inc. ("Roadway") changed its name to YRC, Inc. and acquired the assets of Defendant Yellow Transportation, Inc. ("Yellow"). Yellow was dissolved at that time and is no longer in existence. Prior to the merger, Roadway and Yellow had been competitors for decades. The complete integration of Roadway and Yellow occurred in the spring of 2009. Before then, Roadway and Yellow had maintained completely separate management, employees, facilities, equipment, freight routes, policies and procedures.

The merger of operations resulted in a reduction of operating terminals from 46 (Roadway and Yellow combined) to 25 terminals in California, with a much reduced managerial workforce. Nearby facilities and freight routes were consolidated, leading to a significant reduction in total personnel employed by the new company.

Plaintiffs are former dock supervisors employed either by Roadway or Yellow. They no longer work for YRC. They have filed a proposed class action on behalf of themselves and all other persons employed by defendants as dock supervisors at any time from January 30, 2005, to the conclusion of this action. Plaintiffs claim that their employer misclassified their job as exempt from relevant state wage and hour laws thereby depriving them of overtime wages and rest and meal breaks to which they were otherwise entitled. They seek compensation for that loss.

Defendants claim that the duties and activities of their dock workers varied day to day and facility to facility, but that their dock workers spent the majority of their time (50%+) engaged in activities requiring independent judgment and the exercise of discretion. They claim that the assertion of exempt status for executive and/or administrative employees was appropriate given the primary job duties performed by the dock supervisors. The basic issue in the case is the same as to each member of the purported class: Did the dock supervisor primarily (more than 50% of his/her work time) perform duties

qualifying that employee for exempt status under California wage and hour regulations? The question now before the Court is whether that issue is best resolved on an individual, or instead on a class-wide basis.

Roadway and Yellow (historically) and YRC (currently) utilized a "hub and spoke" system of terminals and routes to move freight. Freight is picked up from local customers by pick-up and delivery ("P&D") trailers within a terminal's geographic area. These trailers are brought to the terminal, where their freight is unloaded, staged on the dock and then loaded onto "line haul" trailers for delivery to a regional service center or direct to another end-of-line termination for local delivery. This is known as the "outbound operation."

The "inbound operation" accepts line haul trailers from other terminals or a regional center, unloads, stages and loads freight onto city trailers for delivery to local customers. Every terminal has both an inbound and outbound operation.

Dock supervisors are considered by their employers to be the first line managers of dock operations. According to defendants, dock supervisors are responsible for: (a) directing and managing dock operations, including the loading and unloading of freight by hourly, union dock workers; (b) planning and allocating available resources, manpower and equipment to move freight as quickly and cost-effectively as possible; (c) ensuring that hazardous materials are properly handled and transported and that safety rules are strictly followed; and (d) for motivating, coaching and disciplining hourly dock workers while administering the terms of YRC's collective bargaining agreement with its hourly workers. According to defendants, dock supervisors are highly compensated, essential members of management.

Plaintiffs describe their jobs in slightly different terms. They say their days are spent primarily "walking the dock" monitoring the work of experienced union dock workers. They have a common job description and are given the basic tools of their trade by "higher ups." For instance, the economic forces at work in the motor freight business require that trailers be filled as full as possible ("maximizing the

cube") without causing damage (not putting heavy freight on top of lighter freight) and that the work be performed as fast as safely possible. Dock supervisors don't handle the freight, don't change the basic plan for loading or unloading freight, don't select the workers moving the freight, and seldom (if ever) discipline their subordinates. Because they exercise little discretion or independent judgment, they argue that their employer misclassified them as exempt employees.

The details of the arguments on the merits are discussed here not because the Court is engaged in merits analysis at this early stage of the litigation, but because the contour of the debate between the parties informs the Court of the evidentiary and case management issues relevant to Rule 23(b)(3) analysis. A district court may consider evidence regarding the merits of the claims if the evidence also goes to the requirements of Rule 23. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160-161 (1982).

## **DISCUSSION**

### I. **The Four Elements of Rule 23(a) are Present.**

Federal Rule of Civil Procedure 23 sets forth the prerequisites requirement for maintaining a class action. The party seeking certification bears the burden of proof with respect to each requirement. Rule 23(a) requires that: (1) the class be so numerous that joinder of all members is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the classes ("typicality"); and (4) the representative parties fairly and adequately protect of the class ("adequacy").

#### A. **Numerosity.**

To establish numerosity, a plaintiff must show that the represented class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23 (a)(1). "Impracticable" does not mean impossible; it refers only to the difficulty or inconvenience of joining all members of the class. *See Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913 (9th Cir. 1964).

In this case, the expected number of class members is approximately 360. That number is certainly large enough to make joinder of each dock supervisor difficult and inconvenient to the Court and to the parties. The numerosity requirement is met.

**B.     Commonality.**

A plaintiff can meet the commonality requirement if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2) . This requirement "has been construed permissively." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id*.

The salient question of law here is common to all dock supervisors: Whether the employers misclassified dock supervisors as exempt employees under California law. An affirmative answer to that legal question begets a number of factual issues common to all class members: (a) did the employers fail to pay overtime pay properly earned by the dock supervisors and (b) did the employers fail to provide rest and meal breaks to their dock supervisors. The Court is satisfied that the common questions of law and fact in this case are sufficient to meet the commonality requirement.

**C.     Typicality.**

Typicality exists when "the claims or defenses of the representative are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). Under the rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical. *Hanlon*, 150 F.3d at 1020. To make this assessment, the Court looks to whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Here, the three original proposed class representatives and the fourth added in the Amended Complaint [Dkt. #111] all are former dock supervisors performing duties they claim are similar to those duties performed by all dock workers employed at the Roadway, Yellow, YRC facilities during the class period. They were all classified as exempt employees by their respective employers and were therefore not paid overtime despite the fact that they all worked shifts of 4/12 or 5/10 during a seven day week. They all claim that no provision was made for rest breaks or a 30-minute uninterrupted meal break as required under California law for non-exempt workers. The injury alleged by the class representatives is typical of the injury suffered by absent class members if, in fact, they were misclassified as exempt employees as plaintiffs allege.

**D.     Adequacy.**

To satisfy the requirement of adequacy, plaintiffs must establish (1) that they do not have conflicts of interest with the proposed class members; and (2) that they are represented by qualified counsel. *Hanlon*, 150 F.3d at 1020.

No conflict of interest has been disclosed to the Court and it is obvious to the Court that plaintiffs' counsel is qualified to represent the class. The adequacy of representation test is met.

**II.     The Requirements of Rule 23(b)(3).**

A party seeking certification must also demonstrate that the proposed class meets one of the requirements of Rule 23(b). Plaintiffs in this case seek money damages rather than injunctive relief so the inquiry focuses on 23(b)(3) which requires that the Court find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly, and efficiently adjudicating the controversy. These questions are interrelated because implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy. *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996).

The predominance requirement is far more demanding than the commonality requirement of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). However, when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis. *Hanlon*, 150 F.3d at 1022.

Some variation among the individual employees, and some difficulty in proof, do not defeat predominance. *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). The fact that the determination of whether an overtime exemption applies to an employee may be a fact-intensive inquiry likewise does not defeat predominance. *See, e.g., Scholtisek v. Eldre Corp.,* 229 F.R.D. 381, 392-93 (W.D.N.Y. 2005). Nevertheless, some courts have denied certification of classes challenging misclassification when the evidence showed individual differences in employee duties so that individualized issues would predominate over class-wide determinations. *See, e.g., Marlo v. United Parcel Service, Inc.,* 251 F.R.D. 476 (C.D. Cal. 2008); *Weigele v. Fed Ex Ground Package System, Inc.*, (S.D. Cal. 2010). Ultimately, the issue of class certification is left to the sound discretion of the trial court.

Rule 23(b)(3)'s predominance and superiority requirements were added "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results'." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Accordingly, a central concern of the Rule 23(b)(3) predominance test is whether "adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1189 (9th Cir. 2001).

Although the employer has the burden to prove that an exemption under California wage law applies to a particular employee or group of employees, *Nordquist v. McGraw-Hill Broadcasting Co.,*

*Inc.,* 32 Cal. App. 4th 555, 562 (1995), a plaintiff in a class action suit has the burden to establish common liability by presenting common evidence that "deliberate misclassification was defendants' policy or practice" or that "classification based on job descriptions alone resulted in widespread de facto misclassification." *Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 329 (2004). Without weighing the evidence, the Court must nevertheless examine the proffered evidence to determine whether class certification in this case is consistent with judicial efficiency.

Under Section 3(A) of the Industrial Welfare Commission ("IWC") Wage Order, employees must be compensated at 1.5 times the employee's normal rate of pay for all overtime worked. California law exempts from overtime pay those persons employed in executive or administrative capacities. The executive exemption applies to any employee:

> (a) whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and
>
> (b) who customarily and regularly directs the work of two or more other employees therein; and
>
> (c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status or other employees will be given particular weight; and
>
> (d) who customarily and regularly exercises discretion and independent judgment; and
>
> (e) who is primarily engaged in duties which meet the test of the exemption . . ..

8 C.C.R. § 11070(i)(A)(1).

Borrowing from one class plaintiff's resume, defendants argue that a dock worker is a senior level position, that coordinates the efforts of shift supervisors to ensure the safe, efficient, and damage-free distribution of freight throughout the terminal. Dock workers are responsible for performance-based hiring decisions, quarterly performance evaluations, planning and staffing, dock operations and

management responsibility for a large number of union employees. These are all upper level management functions that defendants argue justify the claimed exemption. Whether or not the resume accurately reflects the dock worker position or some higher-level position, the fact remains that defendants assert that dock workers perform primarily managerial duties.

In contrast, plaintiffs downplay the importance of their jobs and duties. They cite to their declarations and argue that their primary job is simply "walking the dock" and observing what unionized freight handlers do. They have little or no impact on hiring, or discipline, or safety, or planning. Dock supervisors merely monitor the loading and unloading of freight using their own common sense and relying on well-trained workers who already know how to maximize loads in a safe and expeditious manner.

Regarding uniformity of experience across the dock supervisor work force, defendants emphasize a myriad of differences depending on size and location of facility, willingness to delegate by senior management and the types of freight serviced at a particular location. Plaintiffs claim overwhelming evidence demonstrating the job is the same everywhere with a uniform "position description," standardized goals, programs, policies and procedures for operations, similar salaries and equal experiences with regard to overtime pay and rest/meal breaks.

Whether or not the activities of dock supervisors meet the requirements of the executive or administrative exemption, the pertinent question at this stage is whether the issue can be tried using evidence common to all members of the class. Defendants argue that just as in *Marlo* and *Weigele* the question of exempt status for dock supervisors operating within a "hub and spoke" transportation system involves individual questions of fact that predominate over common questions. They predict a trial where a large number of exemplar witnesses testify for each side. Plaintiffs' witnesses would testify that, contrary to the representations in their resumes, they really had little to do with managerial functions and should not have been classified as exempt. The defense witness list will consist of an equal number of

ORDER
Page - 9

dock supervisors, probably still employed by YRC, who will testify that they have significant administrative responsibilities and routinely exercise discretion and independent judgment. The jury would, if possible, render a decision which largely speculates about the other class members based upon the small number who testified.

Because applicable California law requires a quantitative – not qualitative – analysis of the exemption question, *Ramirez v. Yosemite Water Co.,* 20 Cal. 4th 785, 802 (1999); *Jiminez v. Domino's Pizza, Inc.,* 238 F.R.D. 241, 251-52 (C.D. Cal. 2006), the Court believes that the applicability of the claimed exemption will involve an employee by employee review not just of duties but of actual time devoted to those duties. Such an effort cannot efficiently be performed within a class action proceeding. Plaintiffs argue that the common proof essential to a representative action will come in the form of a survey of class members conducted by their expert, Brian Kriegler, an Economist and PhD in statistics. The *Marlo* trial judge rejected a survey of class members as "common proof" because the court found flaws in the survey methodology. This Court cannot at this time say that the planned survey in this case would be unrepresentative or technically deficient based upon principles of statistics. However, the Court concludes, from the evidence that any survey would suffer from the same degree of variability that the jury would observe among exemplar witnesses, and that this Court has been presented in this motion.

For much of the time covered by the class period, Roadway and Yellow were competitors. They had separate organizational charts, training programs, and governing policies and procedures. To be sure, the techniques used to load a truck are limited and, for the most part, are dictated by common sense. Dock supervisors performed similar tasks for each company. Nevertheless, the idiosyncracies between companies and between facilities within a company are such that the quantitative analysis required in this case includes many variabilities.

The predominance requirement demands a rigorous inquiry that "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623-24. There

is significant disparity between the job duties claimed by dock workers. Some describe a job involving minute by minute decision-making key to the profitability of the company and the safety of its workers. Others portray a relatively high paying job that involves little more than one's attendance. The truth probably lies somewhere in the middle. No matter where the truth lies, it can only be determined by a case by case evaluation of each dock supervisor's activities. Given that conclusion, fairness and court efficiency demand that the merits of plaintiffs' claims be decided in individualized trials with willing plaintiffs joining this action or commencing separate actions in this or some other court. Inasmuch as the Court has found that individual issues predominate in this case, a class action is not the superior method for litigating this matter.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Certify the Class [Dkt. #93] is **DENIED.** Defendants' Motion to Deny Certification [Dkt. #90] is **GRANTED.**

Dated this 22nd day of December, 2010.

/s/ Ronald B. Leighton

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE